**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JEFFREY M. FARWELL, Pro Se

      Plaintiff

v.                                                    Case No. 3:17-cv-1384-J-32-JBT

CITY OF JACKSONVILLE, FLORIDA,
BRYAN MOSIER, in his official and
individual capacities,  ROBERT PRADO,
in his official and individual capacities,
VORIA LANCASTER, in her official and
individual capacities,  KIMBERLY SCOTT,
in her official and individual capacities,
GARY ROBERTS, in his official and individual
capacities, JAMES LIBERO, in his official
and individual capacities,

      Defendants.

---

## AMENDED COMPLAINT

    Plaintiff, Jeffrey M. Farwell, Pro Se, files this amended complaint against the

Defendants, the CITY of JACKSONVILLE, FLORIDA, BRYAN MOSIER, ROBERT

PRADO, VORIA LANCASTER, KIMBERLY SCOTT, GARY ROBERTS and JAMES

LIBERO as a matter of course pursuant to Rule 15 (a), Federal Rules of Civil Procedure

and state as follows:

### STATEMENT OF JURISDICTION AND VENUE

    1.    This complaint seeks damages pursuant to 42 U.S.C. Section 1983 for

violation of Plaintiff's constitutional and Florida statutory and common law legal rights,

particularly under the provisions and protections of the Fourth and Fourteenth Amendments to the United States Constitution, and various Florida constitutional protections and applicable state law.

2.     This court has original jurisdiction pursuant to 28 U.S.C. Section 1331 and 28 U.S.C. Section 1343. This court has supplemental jurisdiction to hear the state claims of Plaintiff Jeffrey M. Farwell under U.S.C.A. Section 1367.

3.     Venue is properly in this Court under 28 U.S.C.A. Section 1391(b) because the unlawful conduct and relevant facts occurred in, or around, the City of Jacksonville, Duval County, Florida, and the Defendants performed their official duties for, and within, the geographical boundaries of Duval County and the City of Jacksonville.

4.     Plaintiff has suffered monetary and other damages in excess of $75,000.

## PARTIES

5.     At all times material to this Complaint, Plaintiff JEFFREY M. FARWELL was, and is, a United States citizen, and a resident of Jacksonville, Florida.

6.     At all times material to this Complaint, Plaintiff JEFFREY M. FARWELL was in lawful control of the subject property, having a leasehold interest in said property whereby he exercised care, custody and control over all activity thereupon and received personal income from the exercise of said control.

7.     At all times material to this Complaint. Defendant CITY OF JACKSONVILLE was a municipal corporation and/or entity organized and existing under the laws of the State of Florida and United States.

8.      At all times material to this Complaint, BRYAN MOZIER was an employee of the City of Jacksonville, Florida. He is sued in his individual and official capacities.

9.      At all times material to this Complaint, ROBERT PRADO was an employee of the City of Jacksonville, Florida. He is being sued in his individual and official capacities.

10.      At all times material to this Complaint, VORIA LANCASTER was an employee of the City of Jacksonville, Florida. She is being sued in her individual and official capacities.

11.      At all times material to this Complaint, KIMBERLY SCOTT was an employee of the City of Jacksonville, Florida. She is being sued in her individual and official capacities.

12.      At all times material to this Complaint, GARY ROBERTS was an employee of the City of Jacksonville, Florida. He is being sued in his individual and official capacities.

13.      At all times material to this Complaint, JAMES LIBERO was an employee of the City of Jacksonville, Florida. He is being sued in his individual and official capacities.

14.      Plaintiff is informed and believes and therefore alleges that at all times material to this Complaint, Defendants, individually and/or collectively were agents, employees, servants, joint ventures, partners, and/or co-conspirators with the other Defendants named in this Complaint and that at all times, each of the Defendants was

acting under color of authority and within the course and scope of that relationship with the other defendants.

15.     Each of the Defendants, individually and/or collectively with the other defendants, caused, and is legally responsible for the incidents, unlawful conduct, injuries and damages alleged by personally participating in the unlawful conduct, or acting jointly or conspiring with others to act, by authorizing or allowing, explicitly or implicitly, policies, plans, customs, practices, or omissions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct, by failing or refusing to initiate and maintain adequate training or supervision, and thus constituting deliberate indifference to the Plaintiff's rights, and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action as further put forth in the claims herein.

16.     In doing the acts and/or omissions alleged, Defendants and each of them, acted under color of authority and/or color of law at all relevant times on behalf of the City of Jacksonville.

17.     Plaintiff is informed and believes, and therefore alleges, that the violations of the Plaintiff's constitutional rights were caused by the customs, policies, and/or practices authorized by policy makers of Defendant City of Jacksonville, Jacksonville Municipal Code Compliance Division current and/or former employees Bryan Mosier, Robert Prado, Voria Lancaster, Kimberly Scott, Gary Roberts and James Libero, as well as other supervisory officials of the Jacksonville Municipal Code Compliance Division, who encouraged, authorized, directed, condoned, and/or ratified the unconstitutional and unlawful conduct complained of in this Complaint. These customs, policies and/or

practices were the motivation behind the violations alleged, and include, but are not

limited to, exposing Plaintiff and his property to unreasonable searches during the course

of code enforcement investigations; failing to maintain adequate lawful policies; failing

to adequately train, supervise and control investigators/officers concerning code

enforcement; failing to investigate and impose discipline on code enforcement officers

who employ improper investigation methods and tactics; failing to adopt investigative

procedures that determine historical, lawful non-conforming or other unique uses

permitted on a property before an inspection is conducted and failing to adopt other

remedial measures and policies to ensure the private property rights of this Plaintiff and

other citizen property owners are not violated as set forth in the claims herein. Employees

and/or subordinates as used in this Complaint, refers to all personnel under the direct or

indirect supervision and control of each named defendant.


## FACTS

18.     On or about December 17, 2015 City of Jacksonville Code Enforcement

Officers Gary Roberts and James Libero entered upon property under Plaintiff's control

located at 1508 University Boulevard North, Jacksonville, Florida ( hereinafter "subject

property") without permission from Plaintiff and without a warrant to do so absent

Plaintiff's permission.

19.     Plaintiff had previously provided to Defendants Mosier, Scott, Prado and

Lancaster, on or about March 9, 2012 and again on or about November 14, 2013, written

notification not to enter upon said property without a properly executed warrant and that

permission to enter all listed properties, including subject property, was denied to

Defendants by Plaintiff. Plaintiff was within his lawful right to deny permission for Defendants to enter upon the subject property. It was Defendants duty to first obtain a warrant prior to entering upon Plaintiff's subject property. (Exhibits 1 & 2).

20.     Said written notices were provided to the following: Kimberly Scott, Voria Lancaster, Robert Prado, Bryan Mosier, and City Attorney Jason Teal. (Exhibits 1 & 2).

Upon information and belief, Kimberly Scott was the JMCCD Director, Acting Director or Supervisor. Voria Lancaster is a JMCCD Supervisor. Robert Prado was the JMCCD Director, Acting Director or Supervisor. Bryan Mosier is the current JMCCD Director, Acting Director or Supervisor and City Attorney Jason Teal, is with the Jacksonville Office of General Counsel, and advises the JMCCD on matters of compliance with laws and legal authority. Defendants Kimberly Scott, Robert Prado and Bryan Mosier are, or were, directly responsible for implementing procedures and guidelines code inspectors such as Defendants Roberts and Libero would follow in performing their official employment duties for the City of Jacksonville, Florida. Defendant Voria Lancaster is the person directly responsible for supervising Defendants Roberts and Libero and ensuring they follow the inspection procedures and guidelines required by their employer.

21.     As used interchangeably in this Complaint, JMCCD is an acronym for the Jacksonville Municipal Code Compliance Division, the Jacksonville Code Compliance Department, the Jacksonville Code Enforcement Department, Jacksonville Code Enforcement and/or simply Code Enforcement. All variations refer to the City of Jacksonville Department that enforces Municipal and Zoning Code matters and is the city

agency employing, or previously employing Defendants Kimberly Scott, Robert Prado,

Bryan Mosier, Voria Lancaster, Gary Roberts and James Libero.

22.     On November 14, 2013 Jacksonville Office of General Counsel attorney

Jason Teal acknowledged said notifications (as described in ¶ 19 and ¶ 44) and wrote, …

" Mr. Farwell:

Please provide the City with a list of all properties that you have an ownership
interest in and which are subject to your below direction.  The City cannot verify
what business interests or rights you may have when the Tax Collector information
does not have the owner listed as "Jeffrey M. Farwell", as is the case with 5708
Merrill Road.  Also, in the event there is property now owned or later acquired by a
different "Jeffrey M. Farwell", the City will need to know which properties are
associated with you.  Furthermore, the City is under no obligation to continuously
research the parcel ownership information for all properties in Duval County to
know when you acquire or sell your interests in property in Duval County.  So, the
City will honor your request as it pertains to the enumerated properties you have
listed, however, if you would like the restriction applied to any of your other
properties, you will need to provide the proper address information.

Sincerely,

Jason Teal ".
(Jason Teal's 11/14/2013 email is attached as Exhibit 3)

23.     In Mr. Teal's written statement above ( ¶ 22 ) he recognizes and accepts

Defendant City's responsibility and duty to obtain a warrant before entering upon the

properties Plaintiff listed in his notifications. Mr. Teal's specific acknowledgment is

excerpted below:

> " … *So, the City will honor your request as it pertains to the enumerated
> properties you have listed, however, if you would like the restriction applied to
> any of your other properties, you will need to provide the proper address
> information*…"

24.     On December 16, 2015, the day before Defendant Inspectors Roberts and

Libero entered upon Plaintiff's property, Balel Xzavian, another Jacksonville Code

inspector (not a defendant in this action), attempted to enter upon the same subject property and was denied access by the tenant, Gerald Thomas, Sr. Although Inspector Balel Xzavian stated, " I can go anywhere I want", he did not enter upon Plaintiff's subject property after being told he could not.

25.     After denying Inspector Balel Xzavian permission to enter subject property, Gerald Thomas, Sr. contacted Plaintiff and Plaintiff arrived at the property approximately 10 minutes later, immediately informing Inspector Balel Xzavian that the Jacksonville Municipal Code Compliance Division had been previously notified not to enter upon 1508 University Blvd. N. without a warrant. Inspector Balel Xzavian claimed he had no knowledge of any such notification, and he was then personally advised by tenant Gerald Thomas, Jr. and Plaintiff Jeffrey M. Farwell of those prior notifications (Exhibits 1 & 2, ¶ 19 and ¶ 24,  ) and the requirement to obtain a warrant prior to entering upon any of the enumerated properties, including the subject property. Balel Xzavian was acting in his official capacity as a City of Jacksonville employee, under color of law, conducting an official code inspection. He received the notification referenced above in that official capacity and, as such, constructive notice was given to all Defendant City employees.

26.     Plaintiff also advised Inspector Balel Xzavian that the actions he claimed he had the authority to do, (i.e.: " I can go anywhere I want"), would violate the Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

27.     After Plaintiff asserted his Fourth and Fourteenth Amendment rights, Inspector Balel Xzavian took no further enforcement action, did not enter the subject property and eventually left the premises.

28.     Upon information and belief, Defendant Voria Lancaster is the JMCCD supervisor of Inspectors Balel Xzavian, Gary Roberts and James Libero. Furthermore Supervisor Lancaster was aware that Plaintiff had provided her office, and herself, with written notice that access to subject property had been specifically denied to all JMCCD (and City) employees absent presentation of a validly issued warrant to enter by a court of competent jurisdiction. Defendant Lancaster, as a JMCCD supervisor, is obligated to notify her subordinates that access to the subject property had been denied. Absent any subordinate notification, Defendant Lancaster deliberately and knowingly allowed her subordinates, Defendants Roberts and Libero, to violate Plaintiff's rights in the same manner Inspector Xzavian attempted to do the previous day, as described in ¶24.

29.     Before entering upon and conducting an inspection of Plaintiff's subject property on December 17, 2015, Inspectors Roberts and Libero knew, or should have known, a properly issued and executed warrant to enter was necessary. No warrant was obtained by either inspector.

30.     Inspector Roberts and Libero , in conducting a warrantless, nonconsensual inspection of Plaintiff's property, acted intentionally, maliciously, deliberately and with knowing disregard of their lawful requirement to first obtain a warrant before entering upon Plaintiff's property. Their actions were a violation of Plaintiff's aforstated Constitutional rights.

31.     Upon information and belief, no corrective or disciplinary action was taken against Defendant Inspector Gary Roberts and/ or Defendant Inspector James Libero for their intentional illegal acts taken under color of office and authority. Such inaction by the superiors of these two defendants demonstrates an acceptance and a condoning of such illegal activity. When conducting their warrantless, nonconsensual inspection of the subject property, Defendants Roberts and Libero acted in a normal, routine and accepted, even expected, manner.

32.     Upon information and belief, no corrective action, procedural or policy changes have been instituted by Defendants Bryan Mosier, Robert Prado, Kimberly Scott or Voria Lancaster since receiving written notification from Plaintiff not to enter upon his property without a warrant to ensure plaintiff's private property rights were not violated as set forth in the claims herein.

33.     Upon information and belief, Kimberly Scott was Director, Acting Director, or a supervisor with the Jacksonville Municipal Code Compliance Division (JMCCD) when she received the two previously referenced written "No Trespassing" notifications from Plaintiff ( ¶19 and ¶ 44 ) . One written notification was received by Defendant Scott on or about March 9, 2012 and a second notice was received on or about November 14, 2013. Each notice listed the subject property, as well as other of Plaintiff's properties, that required a warrant before any JMCCD (city) inspector could enter upon same. Copies of the referenced "No Trespassing" notices are attached as Exhibits 1 & 2.

34.     Upon information and belief Robert Prado was Director, Acting Director, or a supervisor with the Jacksonville Municipal Code Compliance Division (JMCCD) when he also received two written "No Trespassing" notifications from Plaintiff. One

written notification was received by Defendant Prado on or about March 9, 2012 and a second notice was provided on or about November 14, 2013. Each notice listed the subject property, as well as other of Plaintiff's properties, that required a warrant before any JMCCD (city) inspector could enter upon same. Copies of the referenced "No Trespassing" notices are attached as Exhibits 1 & 2.

35.     Upon information and belief Bryan Mosier was Director, Acting Director, or a supervisor with the Jacksonville Municipal Code Compliance Division (JMCCD) when he also received two written "No Trespassing" notifications from Plaintiff. . One written notification was received by Defendant Mosier on or about March 9, 2012 and a second notice was provided on or about November 14, 2013. Each notice listed the subject property, as well as other of Plaintiff's properties, that required a warrant before any JMCCD (city) inspector could enter upon same. Copies of the referenced "No Trespassing" notices are attached as Exhibits 1 & 2.

36.     Upon information and belief Voria Lancaster was a supervisor with the Jacksonville Municipal Code Compliance Division (JMCCD) when she also received two written "No Trespassing" notifications from Plaintiff. One written notification was received by Defendant Lancaster on or about March 9, 2012 and a second notice was provided on or about November 14, 2013. Each notice listed the subject property, as well as other of Plaintiff's properties, that required a warrant before any JMCCD (city) inspector could enter upon same. Copies of the referenced "No Trespassing" notices are attached as Exhibits 1 & 2.

37.     Plaintiff alleges that each of the Defendants performed, participated in, aided and/or abetted in some manner the acts averred in this action, directly and

proximately caused the damages and/or harm set forth below, and are liable to the Plaintiff for the damages he suffered and other relief sought in this action.

38.     On or about January 19, 2016, Plaintiff served Jason R. Gabriel, General Counsel, City of Jacksonville, Florida, Jacksonville Mayor Lenny Curry, the Florida Department of Financial Services and Bryan Mosier, acting Chief, JMCCD with the required Notice of Suit regarding the State tort claims, the named defendants (City of Jacksonville and its named employees), and the nature of the penalties and case pursuant to Fla. Stat. §768.28(6)(a) and (c). (Exhibits 4 & 4a) thus complying with the notification requirements of said statute.

Plaintiff's notice included the following statement: " **\*Claimant hereby requests to be informed of any deficiencies in this notice or whether further information is needed to investigate this claim."** ( Exhibit 4a, p. 3., top of page) in the above referenced notice to insure all statutorily required information was provided to Defendants. Defendant City did not request any further information from Plaintiff, nor indicate Plaintiff's F.S.§ 768.28  notice was deficient.

In addition, said notice contained the following statement with regard to allowable claims: " **and all other claims allowable arising out of the incident described herein."**  placing Defendants on notice additional claims could be forthcoming. ( Exhibit 4a, p. 1., ¶ 2 )

39.     The 6 month notification period required by Fla. Stat. § 768.28(6)(a) prior to filing suit, was satisfied on or about July 19, 2016.

## STATEMENT OF CLAIMS

## FIRST CLAIM FOR RELIEF – 42 USC § 1983

Fourth and Fourteenth Amendment Violations

Protection Against Unreasonable Searches and the Right to be Secure in His Property

By Plaintiff against

Defendants the CITY of JACKSONVILLE, FLORIDA, BRYAN MOSIER,

ROBERT PRADO, VORIA LANCASTER, KIMBERLY SCOTT, GARY ROBERTS

and JAMES LIBERO in their Official and also Individual Capacities with respect to

BRYAN MOSIER, ROBERT PRADO, VORIA LANCASTER, KIMBERLY SCOTT,

GARY ROBERTS and JAMES LIBERO.

40.    The conduct and/or failure to act to prevent nonconsensual warrantless

inspections by the City of Jacksonville and all other Defendants deprived Plaintiff of the

right to be secure in his property and free from unreasonable searches under the Fourth

and Fourteenth Amendments of the United States Constitution.

41.    The actions of the Defendants violated clearly established and well settled

federal constitutional rights of the Plaintiff.

42.    Defendants' misconduct directly and proximately caused Plaintiff to suffer

harm, including invasion of privacy, shock, outrage, extreme emotional distress, damage

to reputation, financial expense, loss of income and humiliation.

**SECOND CLAIM FOR RELIEF – 42 USC § 1983**

Fourteenth Amendment Violations

Substantive Due Process Violations

By Plaintiff against

Defendants the CITY of JACKSONVILLE, FLORIDA, BRYAN MOSIER,

ROBERT PRADO, VORIA LANCASTER, KIMBERLY SCOTT, GARY ROBERTS

and JAMES LIBERO in their Official and also in their Individual Capacities with respect
to BRYAN MOSIER, ROBERT PRADO, VORIA LANCASTER, KIMBERLY SCOTT,
GARY ROBERTS and JAMES LIBERO.

43.     The City of Jacksonville and all other named defendants, continued to and
repeatedly did violate Plaintiff's Fourth Amendment rights to be free from unreasonable
searches.

44.     On two occasions, on or about March 9, 2012 and again on or about
November 14, 2013 written notification ( ¶ 19 and ¶ 44 ) was delivered to City Attorney
Jason Teal and JMCCD supervisory personnel informing all Defendants that JMCCD
inspectors were not to enter upon Plaintiff's properties, listed on said notice, without a
properly executed warrant. In addition, said notice stated that permission to enter the
listed properties was hereby denied by Plaintiff, as was his lawful right, and could not be
granted by any other individual.  On information and belief, Plaintiff recognizes City
Attorney Teal advises the JMCCD on legal and compliance matters.

45.     The written notices (¶ 19 and ¶ 44 ) were provided to Kimberly Scott,
Director, Acting Director, or a supervisor with the Jacksonville Municipal Code
Compliance Department (JMCCD ); Robert Prado, Director, Acting Director, or a
supervisor with JMCCD; Bryan Mosier, Director, Acting Director, or a supervisor with
JMCCD; and Voria Lancaster, a supervisor with JMCCD. It is believed Defendants Scott
and Prado retired from Defendant City within the last 3 years.

46.     On or about December 16, 2015, Balel Xzavian , a non-defendant
Jacksonville Code inspector, attempted to enter upon Plaintiff's property, was denied
access and was advised by Plaintiff that Plaintiff was asserting his Fourth amendment

14

rights. Defendants in this action were effectively notified again about the requirement to obtain a warrant before entering upon Plaintiff's subject property as Inspector Xzavian was operating in his official capacity as a JMCCD code inspector conducting an inspection under the color of law.

47.     Where Defendants Roberts and Libero had ample time to reflect on Plaintiff's assertion of his Fourth amendment rights and to take corrective action before entering upon Plaintiff's property, they did not. Defendants Roberts and Libero acted with indifference to Plaintiff's Constitutional rights as Plaintiff had explained to Inspector Balel Xzavian the previous day. It appears likely Defendants Roberts and Libero entered upon Plaintiff's subject property without a warrant partially because Plaintiff had denied Inspector Xzavian property access the previous day.

48.     Where Defendants Kimberly Scott and Robert Prado also had ample time to take corrective action after receiving Plaintiff's written assertion of his Fourth Amendment rights, and thusly prevent a violation of same, they took no effective action to safeguard Plaintiff's rights. Both these Defendants acted with indifference to Plaintiff's Constitutional rights, contributing directly to the unlawful actions taken by Defendants Roberts and Libero, who viewed such trespass and warrantless, nonconsensual inspections as normal, accepted, condoned and expected by their superiors.

49.     Where Defendants Bryan Mosier and Voria Lancaster had ample time to take corrective action after receiving Plaintiff's written assertion of his Fourth amendment rights, and after Plaintiff's asserted these same rights to Code Inspector Balel Xzavian, neither of these two Defendants took any effective action to safeguard Plaintiff's rights. Both Defendants acted with indifference to Plaintiff's Constitutional

rights, contributing directly to the unlawful actions taken by Defendants Roberts and Libero. Again, such invasions of privacy and unlawful searches appear to be a normal occurrence with JMCCD code inspectors.

50.     All of the Defendants acted with deliberate indifference to Plaintiff's Fourth and Fourteenth Amendment to the U.S. Constitution granting freedom from unreasonable search and the right to be secure in his property.

51.     The Defendants' misconduct alleged above was outrageous and shocking to the conscience and deprived the Plaintiff of the substantive component of due process in violation of the Fourteenth Amendment to the United States Constitution (Art. XIV, U.S. Constitution) as JMCCD file 2016-55550 threatens Plaintiff with fines of $250 per day for noncompliance.

52.     Defendants' misconduct directly and proximately caused the Plaintiff to suffer injury and harm, including an invasion of privacy, shock, outrage, extreme emotional distress, damage to reputation, financial expense, loss of income and humiliation.

### THIRD CLAIM FOR RELIEF – 42 USC § 1983

Failure to Train, Supervise, and Discipline Employees

By Plaintiff against

Defendants CITY of JACKSONVILLE, FLORIDA, BRYAN MOSIER, ROBERT PRADO, VORIA LANCASTER, and KIMBERLY SCOTT in their Official Capacities and also in their Individual Capacities with respect to BRYAN MOSIER, ROBERT PRADO, VORIA LANCASTER, and KIMBERLY SCOTT.

53.     Upon information and belief, Bryan Mosier, Robert Prado and Kimberly Scott, as Directors, Acting Directors and/or senior personnel within the Jacksonville Municipal Code Compliance Division (herein also referred to as "Code Enforcement" and/or "JMCCD") have job responsibilities that include overseeing Code Enforcement Department personnel and the department's compliance with all applicable laws, rules, regulations and codes, including those that protect the private property rights of individuals.

54.     Upon information and belief, Voria Lancaster, as a supervisor within the Jacksonville Municipal Code Compliance Division has job responsibilities that include supervising Code Inspector Roberts and Libero and overseeing their compliance with all applicable laws, rules, regulations and codes, including those that protect the private property rights of individuals.

55.     Upon information and belief, the named Defendants failed to train, and/or supervise, and/or discipline, and/or condoned the unconstitutional actions by Gary Roberts and James Libero.

56.     Upon information and belief, the named Defendants ratified the violations in this case, failing to take any corrective action that would have protected Plaintiff's Fourth and Fourteenth Amendment Constitutional rights to be secure in his property and free from unreasonable searches.

57.     By consciously and deliberately overlooking the acts of misconduct by their subordinates, the named Defendants established a custom and practice of condoning and ratifying such misconduct and established a pattern of tolerating constitutional violations among their subordinate officers. The condoning of misconduct was so

comprehensive and well-known that subordinates were emboldened to blatantly violate the constitutional rights of persons such as Plaintiff, even to the point of proclaiming, "I can go anywhere I want." as stated by Inspector Xzavian to Plaintiff and Inspector Roberts to the subject property tenant's son Gerald Thomas, Jr.

58.    Defendants City of Jacksonville, Florida, Bryan Mosier, Robert Prado, Voria Lancaster, and Kimberly Scott, through their custom and practice of encouraging, condoning, tolerating and ratifying constitutional violations by their subordinates Gary Roberts and James Libero were deliberately indifferent to the constitutional violations committed by these subordinate Defendants.

59.    Based on the customs and practice of condoning, tolerating, and ratifying constitutional violations and failure to adequately train and discipline the subordinate officers who committed constitutional violations, defendants City of Jacksonville, Florida, Bryan Mosier, Robert Prado, Voria Lancaster, and Kimberly Scott are liable for constitutional violations committed by Defendants Gary Roberts and James Libero, and for the damages suffered by Plaintiff as set forth in this complaint.

60.    The mentioned acts of the named defendants were willful, wanton, malicious and oppressive, justifying the awarding of exemplary and punitive damages.

## FOURTH CLAIM FOR RELIEF

Negligence

By Plaintiff against

Defendants CITY of JACKSONVILLE, FLORIDA, BRYAN MOSIER, ROBERT PRADO, VORIA LANCASTER, and KIMBERLY SCOTT in their Official

Capacities and against BRYAN MOSIER, ROBERT PRADO, VORIA LANCASTER, and KIMBERLY SCOTT in their Individual Capacities.

61.     Upon information and belief, Bryan Mosier, Robert Prado and Kimberly Scott, as Directors, Acting Directors and/or senior personnel within the Jacksonville Municipal Code Compliance Division (herein also referred to as "Code Enforcement" and/or "JMCCD") have job responsibilities that include overseeing Code Enforcement Department personnel and the department's compliance with all applicable laws, rules, regulations and codes, including those that protect the private property rights of individuals.

62.     Upon information and belief, Voria Lancaster, as a supervisor within the Jacksonville Municipal Code Compliance Division has job responsibilities that include supervising Code Inspector Roberts and Libero and overseeing their compliance with all applicable laws, rules, regulations and codes, including those that protect the private property rights of individuals.

63.     Defendants' acts, omissions, and misconduct alleged in this Complaint constituted a breach of their duty to Plaintiff to avoid causing the harm alleged and avoid and prevent violations of Plaintiff's constitutional, statutory, and common law rights.

64.     The Defendant's breach *occurred the day after* a similar nonconsensual, warrantless inspection was attempted ( ¶24 ), in which Plaintiff was a participant whereby he saw, heard and was involved ( ¶26 ). This breach by Defendants was a substantial factor in causing the Plaintiff to suffer harm including emotional distress, loss of income and costs of litigation.

65.     Defendants had an obligation and duty to respect and comply with Plaintiff's requirement that a warrant be obtained before entry onto the subject property by any City employee, as City attorney Jason Teal previously admitted ( ¶ 23 ). Defendants breached that duty by entering upon the subject property without a warrant.

## FIFTH CLAIM FOR RELIEF

Intentional Infliction of Emotional Distress

By Plaintiff against

Defendants CITY of JACKSONVILLE, FLORIDA, BRYAN MOSIER, ROBERT PRADO, VORIA LANCASTER, and KIMBERLY SCOTT in their Official Capacities and against BRYAN MOSIER, ROBERT PRADO, VORIA LANCASTER, and KIMBERLY SCOTT in their Individual Capacities.

66.     Plaintiff incorporates by reference ¶6, ¶61 and ¶62 as if set forth here in full.

67.     At all times mentioned, individual defendants were acting individually and in their official capacity, under color of law within the course and scope of their employment with the City of Jacksonville, Florida.

68.     Defendants acted intentionally or recklessly and knew or should have known that emotional distress would likely result from their failure to ensure Plaintiff's Fourth and Fourteenth Amendment rights to be secure in his property and free from unreasonable search was not violated. In all likelihood, the events described in ¶30 were a deliberate attempt to intimidate Plaintiff into compliance with whatever standards the Defendants deemed appropriate without regard to Plaintiff's lawful right to use his property.

69.     Defendants knew or should have known that their conduct, including but not limited to the dozens of other prior nonconsensual, warrantless inspections conducted by JMCCD inspectors on this subject property and on Plaintiff's other listed properties (Exhibits 1 & 2, " Notice " ) was outrageous, beyond all bounds of decency, utterly intolerable in a civilized community, and violated the Constitutional rights of the Plaintiff.

70.     Defendants' acts were done with malicious and oppressive intent, having conducted dozens of nonconsensual, warrantless inspections of the subject property prior to the events alleged in this complaint (¶30) by Defendants Roberts and Libero.

71.     Defendants' conduct caused emotional distress to Plaintiff.

72.     The emotional distress was severe, including shock, outrage, grief, loss of sleep, humiliation, anger, worry and nausea.

### SIXTH CLAIM FOR RELIEF

Negligent Infliction of Emotional Distress

By Plaintiff against

Defendants CITY of JACKSONVILLE, FLORIDA, BRYAN MOSIER, ROBERT PRADO, VORIA LANCASTER, and KIMBERLY SCOTT in their Official Capacities and against BRYAN MOSIER, ROBERT PRADO, VORIA LANCASTER, and KIMBERLY SCOTT in their Individual Capacities.

73.     Plaintiff incorporates by reference ¶6, ¶61 and ¶62 as if set forth here in full.

74.     At all times mentioned, individual defendants were acting individually and in their official capacity, under the color of law within the course and scope of their employment with the City of Jacksonville, Florida.

75.     Defendants acted intentionally or recklessly and knew or should have known that emotional distress would likely result from their failure to ensure Plaintiff's Fourth and Fourteenth Amendment rights to be secure in his property and free from unreasonable search was not violated. In all likelihood, the events described in ¶30 were a deliberate attempt to intimidate Plaintiff into compliance with whatever standards the Defendants deemed appropriate without regard to Plaintiff's lawful right to use his property.

76.     Defendants knew or should have known that their conduct, including but not limited to the dozens of other prior nonconsensual, warrantless inspections conducted by JMCCD inspectors on this subject property and on Plaintiff's other listed properties (Exhibits 1 & 2, " Notice " ) was outrageous, beyond all bounds of decency, utterly intolerable in a civilized community, and violated the Constitutional rights of the Plaintiff.

77.     Defendants' acts were done with malicious and oppressive intent as set out in ¶70 above.

78.     Defendants' conduct caused emotional distress to Plaintiff.

79.     The emotional distress was severe, including shock, outrage, grief, loss of sleep, humiliation, anger, worry and nausea.

## SEVENTH CLAIM FOR RELIEF

Governmental Intrusion on the Plaintiff's Right To Privacy

And into the Personal Life of the Plaintiff

Defendants CITY of JACKSONVILLE, FLORIDA, BRYAN MOSIER,

ROBERT PRADO, VORIA LANCASTER, and KIMBERLY SCOTT in their Official

Capacities and against BRYAN MOSIER, ROBERT PRADO, VORIA LANCASTER,

and KIMBERLY SCOTT in their Individual Capacities.

80.     Plaintiff incorporates by reference ¶6, ¶ 61 and ¶ 62 as if set forth here in

full.

81.     At all times mentioned, individual defendants were acting individually and

in their official capacity, under color of law within the course and scope of their

employment with the City of Jacksonville, Florida.

82.     Defendants acted intentionally or recklessly and knew or should have

known that emotional distress would likely result.

83.     Defendants knew or should have known that their conduct violated the

Plaintiff's Constitutional rights to be secure in his property and free from unreasonable

search.

84.     Defendants knew or should have known their entry onto Plaintiff's

property had been denied.

85.     Defendants knew or should have known their entry onto Plaintiff's

property without an inspection or search warrant was illegal.

86.     Defendants' acts were done with malicious and oppressive intent as set out

in ¶70 above.

87.     Defendants' conduct of intruding upon Plaintiff's property using  their

official governmental authority caused harm, including emotional distress, to Plaintiff.

88.     The emotional distress was severe, including shock, outrage, grief, loss of sleep, humiliation, anger, worry and nausea.

## EIGHTH CLAIM FOR RELIEF

Invasion of Privacy

Defendants CITY of JACKSONVILLE, FLORIDA, BRYAN MOSIER, ROBERT PRADO, VORIA LANCASTER, and KIMBERLY SCOTT in their Official Capacities and against BRYAN MOSIER, ROBERT PRADO, VORIA LANCASTER, and KIMBERLY SCOTT in their Individual Capacities.

89.     Plaintiff incorporates by reference paragraphs¶6, ¶ 61, ¶ 62, ¶ 67 and ¶ 68 as if set forth here in full.

90.     Defendants Gary Roberts and James Libero entered upon Plaintiff's property without lawful excuse, disregarded Plaintiff's written notice requiring City of Jacksonville personnel obtain a warrant before entering upon the subject property and proceeded to conduct a municipal code and/or zoning compliance inspection.

91.     Defendants Gary Roberts and James Libero photographed sections of Plaintiff's property not visible from public areas as part of their official actions.

92.     All other defendants permitted and/or condoned and/or encouraged the unlawful physical intrusion onto Plaintiff's property fully aware Defendants Roberts and Libero were not complying with Jacksonville Municipal Code 518.123 whereby Code inspectors are required to inform the occupant of private property their [the occupant's] right to deny entry by said inspector.

The referenced municipal code reads: " ... *(b)     At the time of inspection, the Chief shall properly identify himself and shall advise the occupant of his right to*

*refuse entry to the nonpublic areas of the building, structure or premises. He shall further advise the occupant that an inspection warrant may be obtained if entry is refused."* (Exhibit 6).

Although Defendants Roberts and Libero were performing an inspection under Jacksonville Municipal Code 518, neither Defendant complied with the 518.123 notification requirement.

93.    A reasonable person would find the intrusion and invasion of the Plaintiff's private property alarming, outrageous and objectionable.

94.    Defendants Gary Roberts and James Libero's entry onto Plaintiff's property was premeditated, intentional and exceeded their lawful authority.

95.    Defendant's intrusion onto Plaintiff's subject property caused Plaintiff distress and uncertainty over how lawfully to use his property for income generation. The activity occurring on the subject property at the time of the nonconsensual, warrantless inspection (¶ 18) was lawful and in compliance with current zoning and occupational business requirements.

96.    Defendants Roberts and Libero did not cite any unlawful activity occurring on subject property as a result of their unlawful trespass and illegal JMCCD inspection which supports the conclusion there was no probable cause to obtain a warrant to conduct an inspection on Plaintiff's property and therefore none was sought.

97.    Defendants City of Jacksonville, Florida, Bryan Mosier, Kimberly Scott, Robert Prado and Voria Lancaster, by their history of allowing JMCCD inspectors to intrude onto Plaintiff's property (subject property and other properties) without permission and/or disregarding the private property rights of Plaintiff, caused direct

financial harm. As a result of Defendant' actions, Plaintiff has suffered loss of rental property income, as well as incurring the costs of researching, preparing and defending his property through this and other actions.

## NINTH CLAIM FOR RELIEF

Negligent Training and Supervision

By Plaintiff against

Defendants the CITY of JACKSONVILLE, FLORIDA, BRYAN MOSIER, ROBERT PRADO, VORIA LANCASTER and KIMBERLY SCOTT in their Official Capacities and against BRYAN MOSIER, ROBERT PRADO, VORIA LANCASTER and KIMBERLY SCOTT in their Individual Capacities.

98.     Plaintiff incorporates by reference ¶6, ¶ 61, ¶ 62, ¶ 67 and ¶ 68 as if set forth here in full.

99.     Upon information and belief, each of the named defendants failed to train and supervise their subordinates in well-established Constitutional rights and in other law.

100.     City of Jacksonville and its supervisory employees owed duties to Plaintiff to manage their department(s), supervise and train their employees, and prevent their employees from committing the misconduct described in this complaint. Employees and/or subordinates as used in this complaint, refers to all personnel under the supervision and control of the named defendants.

101.     Upon information and belief, Kimberly Scott's subordinates at all relevant times were defendants Bryan Mosier, Robert Prado, Voria Lancaster, Gary Roberts and James Libero.

102.    Upon information and belief, Robert Prado's subordinates at all relevant times were defendants Bryan Mosier, Voria Lancaster, Gary Roberts and James Libero.

103.    Upon information and belief, Bryan Mosier's subordinates at all relevant times were defendants Voria Lancaster, Gary Roberts and James Libero.

104.    Upon information and belief, Voria Lancaster's subordinates at all relevant times were Gary Roberts and James Libero.

105.    As a result of the named Defendants' negligent failure to train and supervise their subordinates, Plaintiff suffered violations to his Constitutional rights, emotional distress, governmental intrusion of his privacy, invasion of privacy, loss of quiet enjoyment and trespass to his land.

## TENTH CLAIM FOR RELIEF

Malicious Prosecution and Misuse of Authority

Defendants the CITY of JACKSONVILLE, FLORIDA, BRYAN MOSIER, VORIA LANCASTER, GARY ROBERTS and JAMES LIBERO in their Official Capacities and against BRYAN MOSIER, VORIA LANCASTER, GARY ROBERTS and JAMES LIBERO in their Individual Capacities.

106.    Plaintiff incorporates by reference ¶6, ¶ 61, ¶ 62 and ¶ 67 as if set forth here in full.

107.    All defendants were involved in the municipal and/or zoning code investigation and compliance actions taken against Plaintiff.

108.    There was no warrant or other lawful authority present allowing Defendants to enter upon the subject property in defiance of Plaintiff's written denial of

permission to enter. Even if Defendants had requested a warrant, in all likelihood none

would have been issued since probable cause was not established (as stated in ¶ 96).

109.    Absent the lawful authority to enter the subject property, as stated in ¶108

and ¶ 96, Defendants had no lawful basis to conduct any Code or Zoning inspection

thereon. Defendants' investigative action, including but not limited to actions described

in Official JMCCD file 2016-55550, represents Malicious Prosecution and Misuse of

Authority. Citations by the JMCCD carry a possible fine of $250 per day, per violation.

(JMCCD file 2016-55550 is presented as Exhibit 5).

110.    Defendants knew or should have known that their conduct, including but

not limited to the dozens of other prior nonconsensual, warrantless inspections conducted

by JMCCD inspectors on this subject property and on Plaintiff's other listed properties

(Exhibits 1 & 2, " Notice " ) was outrageous, beyond all bounds of decency, utterly

intolerable in a civilized community, and violated the Constitutional rights of the

Plaintiff.


## ELEVENTH CLAIM FOR RELIEF

Trespass to Land

Defendants the CITY of JACKSONVILLE, FLORIDA, BRYAN MOSIER,

VORIA LANCASTER, GARY ROBERTS and JAMES LIBERO in their Official

Capacities and against BRYAN MOSIER, VORIA LANCASTER, GARY ROBERTS

and JAMES LIBERO in their Individual Capacities.

111.    Plaintiff incorporates by reference ¶6, ¶ 61, ¶ 62, ¶ 67 and ¶ 68 as if set forth here in full.

112.    Defendants Gary Roberts and James Libero went onto Plaintiff's property on purpose and deliberately.

113.    All defendants were advised by Plaintiff not to enter upon the subject property without a warrant, personally through the JMCCD employee Balel Xzavian, and in writing as previously referenced in ¶ 45. Plaintiff personally advised Balel Xzavian, and in doing so constructively notified all Defendants, that no city employee could enter upon the subject property without a warrant as described in ¶ 25 through ¶ 27 herein.

114.    Defendants Gary Roberts and James Libero did not contact Plaintiff for permission to enter upon the subject property, nor did they obtain a warrant to do so, prior to entering. Their entry was without consent of the Plaintiff and without the lawful authority of a warrant.

115.    Entry upon Plaintiff's property By Defendants Gary Roberts and James Libero was after Plaintiff notified the JMCCD, in writing and in person, not to enter without a warrant. Such entry was deliberate and in deference to Plaintiff's Fourth and Fourteenth Constitutional Amendment protections, as stated in ¶30.

116.    Entry upon Plaintiff's property By Defendants Gary Roberts and James Libero, as set out in ¶30, ¶ 114 and ¶ 115 above, was with the knowledge of Defendants Bryan Mosier, Robert Prado, Voria Lancaster and Kimberly Scott.

117.    Entry upon Plaintiff's property By Defendants Gary Roberts and James Libero was with the knowledge, consent and by direction of Defendants Bryan Mosier and Voria Lancaster as evidenced by their failure to prevent said entry.

### RELIEF REQUESTED

Plaintiff requests judgment against Defendants, and each of them for the following:

1.      General and special damages in excess of $75,000 personally and individually against each Defendant;

2.      Punitive and exemplary damages against all defendants sued in their individual capacities in an amount of $2.5 million or an amount sufficient to deter and to make an example of each such individual Defendant:

3.      Pre and post judgment interest;

4.      Attorney fees, if incurred and costs of suit;

5.      Such other relief as this court deems just and equitable.


I declare under penalty of perjury that the foregoing statements of fact are true and correct.


__1/22/2018__
Date

/s/ Jeffrey M. Farwell
Jeffrey M. Farwell, Plaintiff Pro Se
5320 Floral Bluff Ct.
Jacksonville, Fl. 32211
904-208-1277
jefffarwell@comcast.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this $\underline{22^{nd}}$ day of January, 2018, a true and correct copy of the foregoing was served via email to Jeffrey C. Close at JClose@coj.net Counsel for Defendants.

/s/ Jeffrey M. Farwell
Jeffrey M. Farwell, Plaintiff Pro Se